UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JORDAN CORDELL HUDSON,<br><br>Petitioner,<br><br>v.<br><br>CALIFORNIA REHABILITATION CENTER, Warden,<br><br>Respondent. | No. 2:19-cv-01522 KJM GGH P<br><br><br><br>FINDINGS AND RECOMMENDATIONS |

*Introduction and Summary*

Petitioner, a state prisoner proceeding pro se, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. §2254. The matter was referred to the United States Magistrate Judge pursuant to 28 U.S.C. §636(b)(1) and Local Rule 302(c).

Petitioner, convicted of serial sex crimes, raises two claims, but they both concern insufficiency of evidence. An appeal was taken, but on a sentencing issue only. Petitioner directed attacks to the merits of his conviction only in state habeas proceedings. Somewhat confusingly, petitioner in this federal case, apparently raises as a strongly argued straight claim that the evidence showing him to be at a different place when one of the crimes took place renders the evidence of conviction on that count to be insufficient, but this insufficiency is not raised in the section where he claims appellate counsel was ineffective for not raising

1

"meritorious" claims. Conversely, petitioner asserts that for two of the other crime victims his appellate counsel was not effective for failing to raise two meritorious insufficiency of evidence claims, but petitioner does not assert claims in and of themselves that the evidence was insufficient.

Regardless of the analytical prism for petitioner's claims, all involve an allegation of insufficient evidence, and no matter how framed, each claim requires an analysis of whether the evidence in some way was indeed insufficient. For the reasons set forth below, the undersigned recommends the petition should be denied in its entirety.

*Factual Background*

Although the California Court of Appeal, Third Appellate District ("Court of Appeal") did not analyze a sufficiency of the evidence issue in its opinion, the factual findings of the appellate court are a useful starting point for our discussion herein.

> On the morning of February 3, 2014, J.V. left her house to walk to the gym. She passed defendant along the way.
>
> Defendant asked her if she would stop to talk to him. She said "no" and continued walking. A short while later, J.V. noticed defendant running towards her in the street. Defendant said, "I like the way you play with your booty hole." J.V. may have cussed in response and kept walking on the sidewalk.
>
> Defendant then grabbed J.V. by the waist from behind. She tried to peel his hands off her. As they struggled, they fell to the ground on the front lawn of a nearby house. The yard had a small brick retaining wall. J.V.'s back was on the grass, but her legs dangled over the short retaining wall. Defendant was on top of her.
>
> Defendant tried to pull J.V.'s pants down while she continued to fight him. She held onto her pants with her left hand, and she hit defendant twice in the face with her right hand. He eventually succeeded in pulling her pants down so that her buttocks and vagina were partially exposed. She continued to struggle to pull her pants up, and yelled twice for defendant to "stop." Defendant responded, "No, I don't even care."
>
> Defendant then picked J.V. up and slammed her to the nearby sidewalk. At this point, defendant was able to pull J.V.'s pants to her knees, fully exposing her vagina and buttocks. He dragged her along the sidewalk and began fiddling with the drawstring on his pants. Defendant pulled J.V.'s neck towards his groin area in an attempt to force her to orally copulate him. J.V. could smell defendant's penis, which was a few inches from her face. She did not see defendant's penis, however, because she had turned her head away.

> J.V. told defendant "no," and continued to pulled her head away. Defendant then said, "I don't even care," and ran away. Defendant did not succeed in putting his penis in either J.V.'s vagina or her mouth. J.V. described the incident as "very fast."
>
> After defendant left, J.V. pulled her pants up. She called her boyfriend and her sisters to tell them about the attack. Although they looked for defendant in the area, they could not find him. Later that day, J.V. reported the attack to police.
>
> Approximately two weeks later, on February 20, 2014, defendant assaulted M.C. while she walked home alone from school. Defendant passed her while riding a bike and said "Hey." While standing in the street, defendant grabbed her legs from behind and threw her down. He unbuttoned his pants and tried to put his penis in her mouth. M.C. was able to yell for help and fight defendant off; he gave up the attack and ran away. M.C. reported the assault to police.
>
> Later that same day, A.M. was walking home alone in the dark when defendant approached her on a bike. He commented about her butt, and grabbed her buttocks. She pushed him away and quickly walked to a nearby apartment complex while calling her sister. Defendant followed. A.M.'s sister came outside and confronted defendant, and defendant took off. He was apprehended by police later that night.

People v. Hudson, No. C083615, 2018 WL 3828783, at *1-3 (Cal. Ct. App. Aug. 13, 2018).

*Procedural Background*

> An October 2016 amended information charged defendant with assaulting J.V. with the intent to commit rape (§§ 220, 261, subd. (a)(2)—count one), assaulting J.V. with the intent to commit forcible oral copulation (§§ 220, 288a, subd. (c)(2)—count two), assaulting M.C. with the intent to commit forcible oral copulation (§§ 220, 288a, subd. (c)(2)—count three), and committing a lewd and lascivious act on A.M., a child over 15 years old and more than 10 years younger than defendant (§ 288, subd. (c)(1)—count four).
>
> The jury found defendant guilty of all charges. The court sentenced defendant to an aggregate term of 21 years in state prison, consisting of the upper term of three years for the lewd and lascivious act conviction in count four, and to consecutive terms of six years each for the three assault convictions in counts one through three. Defendant timely appealed.

People v. Hudson, 2018 WL 3828783, at *2.

The appeal was sought as to a sentencing error only. None of the issues here concern that appeal. The issue of insufficient evidence and ineffective assistance of counsel for not raising sufficiency of the evidence were first set forth in a habeas corpus petition before the Sacramento County Superior Court ("Superior Court"). ECF No. 12-15. The Superior Court denied the

3

straight insufficient evidence issues on procedural default grounds with a citation to In re Harris, 5 Cal.4th 813, 829 (1993) (claims which should have been raised on direct appeal cannot be raised in habeas corpus). ECF No. 12-16. The Superior Court denied the ineffective assistance of appellate counsel issues on the merits. Id. The petitions filed in the Court of Appeal and the California Supreme Court were silent denials thereby adopting the decision of the Superior Court as a matter of law. ECF Nos. 12-17-12-20. See Wilson v. Sellers, 138 S.Ct. 1188 (2018).

This federal petition was timely filed on August 8, 2019. ECF 1. Respondent answered, ECF No. 11, but addressed the merits only, and did not seek to have the straight sufficiency of evidence issues procedurally barred or found unexhausted. Rather, respondent treated the federal petition as having raised sufficiency of the evidence issues with respect to all three victims; the same was argued with respect to the ineffective assistance of appellate counsel.

*Issues Presented*

As set forth above, perhaps deciding that it was simply more efficient to ignore the procedural default problems, respondent addressed all counts only on the merits in both the straight insufficient evidence section and in the ineffective assistance section. The undersigned will do likewise, but will discuss the three victims in the order in which the Court of Appeal addressed the victims in the facts, as the timing of the three attacks is important, especially in the discussion of the second victim, M.C.

*Legal Standards*

Before analyzing the record concerning petitioner's claims, it is necessary to set forth the standards for reviewing claims of insufficient evidence and ineffective assistance of counsel regarding same. Respondent is essentially correct in viewing the outcome of the straight insufficient evidence issues as determining the outcome as well for the ineffective assistance issues. That is, if the evidence were to be fund sufficient, counsel cannot be faulted for not raising a losing issue. While theoretically, if the sufficiency outcome was very close, reasonable appellate counsel might be found deficient for not raising a colorable issue in the state appeals process, it is difficult to conceive in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") process where prejudice would be found in a situation where the evidence was

otherwise sufficient for conviction. As will be seen, the sufficiency of the evidence issue is not a close call.

*Sufficiency of Evidence*

The standards governing petitioner's insufficient evidence argument are as follows. "A petitioner for a federal writ of habeas corpus faces a heavy burden when challenging the sufficiency of the evidence used to obtain a state conviction on federal due process grounds." Juan H. v. Allen, 408 F.3d 1262, 1274 (9th Cir. 2005). Sufficient evidence supports a conviction if, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). "After AEDPA, we apply the standards of Jackson with an additional layer of deference." Juan H. v. Allen, 408 F.3d at 1274.

Therefore, when a challenge is brought alleging insufficient evidence, federal habeas corpus relief is available if it is found that upon the record evidence adduced at trial, viewed in the light most favorable to the prosecution, no rational trier of fact could have found "the essential elements of the crime" proven beyond a reasonable doubt. Jackson, supra, 443 U.S. at 319. In Jackson the Supreme Court articulated a two-step inquiry for considering a challenge to a conviction based on sufficiency of the evidence. United States v. Nevils, 598 F.3d 1158, 1164 (9th Cir. 2010).

> First, a reviewing court must consider the evidence presented at trial in the light most favorable to the prosecution. *Jackson*, 443 U.S. at 319, 99 S.Ct. 2781. This means that a court of appeals may not usurp the role of the finder of fact by considering how it would have resolved the conflicts, made the inferences, or considered the evidence at trial. *See id.* at 318-19, 99 S.Ct. 2781. Rather, when "faced with a record of historical facts that supports conflicting inferences" a reviewing court "must presume-even if it does not affirmatively appear in the record-that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.* at 326, 99 S.Ct. 2781; *see also McDaniel*, 130 S.Ct. at 673-74.
>
> Second, after viewing the evidence in the light most favorable to the prosecution, the reviewing court must determine whether this evidence, so viewed, is adequate to allow "*any* rational trier of fact [to find] the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319, 99 S.Ct. 2781. This second step protects against rare occasions in which "a properly instructed jury

5

> may ... convict even when it can be said that no rational trier of fact could find guilt beyond a reasonable doubt[.]" *Id.* at 317, 99 S.Ct. 2781. More than a "mere modicum" of evidence is required to support a verdict. *Id.* at 320, 99 S.Ct. 2781(rejecting the rule that a conviction be affirmed if "some evidence" in the record supports the jury's finding of guilt). At this second step, however, a reviewing court may not "ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt," *id.* at 318-19, 99 S.Ct. 2781 (quoting *Woodby v. INS*, 385 U.S. 276, 282, 87 S.Ct. 483, 17 L.Ed.2d 362 (1966)) (internal quotation marks omitted), only whether "any " rational trier of fact could have made that finding, *id.* at 319, 99 S.Ct. 2781.

Nevils, 598 F.3d at 1165.

Moreover, petitioner's challenge to the sufficiency of evidence based on credibility of the witnesses is not cognizable in an insufficient evidence claim. See McMillan v. Gomez, 19 F.3d 465, 469 (9th Cir. 1994); see also Schlup v. Delo, 513 U.S. 298, 330, (1995) (recognizing that the credibility of witnesses is generally beyond the scope of sufficiency of the evidence review).

Again, the above analysis is filtered through the prism of AEDPA unreasonableness, i.e., the conclusions about sufficient evidence drawn from by a state court (last reasoned decision) could not reasonably have been found given the evidence because fairminded jurists could not have reached the conclusions. Juan H. v. Allen, supra. See generally, Harrington v. Richter, 562 U.S. 86 (2011) (full discussion of AEDPA deference).

Because an ineffective assistance of counsel claim, see below, can be based on state law as well as federal, one must also be aware of any different standard for sufficiency of the evidence. However, state law on this subject is identical to federal law. People v. Hatch, 22 Cal.4th 260, 272 (2000).

Petitioner's second claim invokes ineffective assistance of appellate counsel for not raising sufficiency of the evidence; the standard for such a claim is as follows:

> All of the issues before us relate to claims of ineffective assistance of appellate counsel in state court. "The due process clause of the fourteenth amendment guarantees a criminal defendant the right to the effective assistance of counsel on his first appeal as of right." *Miller v. Keeney*, 882 F.2d 1428, 1431 (9th Cir.1989) (citing *Evitts v. Lucey*, 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985)). We review claims of ineffective assistance of appellate counsel under the familiar standard set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See Smith v. Robbins*, 528

> U.S. 259, 285, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000); *Pizzuto v. Arave*, 280 F.3d 949, 969 (9th Cir.2002). First, the petitioner must show that counsel's performance was objectively unreasonable, which in the appellate context requires the petitioner to demonstrate that counsel acted unreasonably in failing to discover and brief a merit-worthy issue. *Smith*, 528 U.S. at 285, 120 S.Ct. 746; *Wildman v. Johnson*, 261 F.3d 832, 841–42 (9th Cir.2001). Second, the petitioner must show prejudice, which in this context means that the petitioner must demonstrate a reasonable probability that, but for appellate counsel's failure to raise the issue, the petitioner would have prevailed in his appeal. *Smith*, 528 U.S. at 285–86, 120 S.Ct. 746.

Moorman v. Ryan, 628 F.3d 1102, 1106 (9th Cir. 2010).

Of course, because this case is subject to AEDPA deference, the appellate counsel ineffectiveness claim is subject to the same AEDPA filter of any other claim which state courts reviewed on the merits. That is, one must find that a fairminded state court could not find that counsel rendered effective assistance of appellate counsel given the circumstances of the issue. See Meier v. Haviland, No. 2:09-CV-0551 KJN P, 2010 WL 4288688, at *5 (E.D. Cal. Oct. 22, 2010); see also, Von Hall v. Nooth, 741 F. App'x 528 (9th Cir. 2018).

*Discussion*

Given the above standards, Petitioner's assertion that insufficient evidence existed to convict him of sex crimes against the three victims is devoid of any merit. The undersigned has reviewed the transcript and evidence in this case, see ECF No. 12, and the evidence is in fact, overwhelming.

Taking the first victim, J.V., the Court of Appeal went to some effort to set forth the facts relating to this victim. See, supra. And those facts are presumptively correct, Sumner v. Mata, 449 U.S. 539, 547 (1981), where petitioner bears the burden of showing by clear and convincing evidence that they are not. 28 U.S.C. §§ 2254(d)(2); (e)(2)(B).

In reviewing the evidence, the undersigned finds that the jury and the Court of Appeal could easily have found credible the testimony of J.V. implicating petitioner. She was able to identify petitioner in court with certainty, ECF No. 12-4 at 229-230,[1] and testified with specificity as to the events and locale of the attack. See ECF No. 12-4 at 228-239. See also respondent's

---
[1] The undersigned prefers to use the electronic pagination created when the exhibits of record are filed in lieu of the RT citation.

correct summary of J.V.'s testimony. ECF No. 11 at 20-21. There is no doubt that J.V. had the ability to clearly observe petitioner during the attack. She even identified petitioner's clothes, some of which were used on the day of the attack and pictures of which had been introduced into evidence. ECF No. 12-5 at 6-9, 39.

But most importantly, J.V. had a chance to encounter petitioner after the attack, which left no doubt that petitioner was the attacker. She was riding the Sacramento Light Rail (hereafter "Train") on February 20, 2014 (some days after she had been attacked) when petitioner got on the Train with his bike. Between the Butterfield and Zinfandel stops, petitioner approached her and performed a gross grabbing of his crotch while looking directly at J.V. ECF No. 12-5 at 11. It so happened that security cameras at the Butterfield and Zinfandel stops, and in the Train itself, clearly pictured both J.V. and petitioner. See ECF No. 12-5 at 15-16 (the Stipulation concerning Exhibits 9, 10 and 11 indicating the Train camera which was one hour ahead of the actual time). J.V. was clearly able to identify her attacker again. Id. at 18. Petitioner followed her once J.V. had left the Train at the Zinfandel stop, but a fellow passenger on the train assisted J.V. avoid petitioner once off the Train. Id. at 18-20 (This Train evidence coincidentally plays a part in the discussion concerning the second victim).

Petitioner protests that his DNA was not found on J.V., so therefore the evidence is insufficient. While an attacker's DNA present on a victim often helps to cement a case against an attacker, it is not always the case that DNA is transferred or remains unadulterated if transferred. The lack of DNA evidence, without more, says little about whether an attack occurred or whether a certain individual is the attacker. This is true especially in cases like J.V. where petitioner was unable to consummate any sex act on the body of J.V. because of J.V.'s resisting struggle with petitioner. Petitioner further protests that because there were some [minor] factual inconsistencies between her interview with a police detective and some of the testimony at trial, she could not be believed. Not only is the credibility of witnesses, and the jury's implicit findings thereon, unimpeachable in a federal habeas proceeding, see above Legal Standards, the alleged inconsistencies, even if they were indeed inconsistent, were very minor and did not detract from the heavy evidence against petitioner given by J.V. and the video evidence.

On the very same day of the Train incident above, M.C. was attacked in the same general area as J.V.,[2] and was subject to a forced attempted oral copulation, but the victim's struggle compelled the attacker to give up. ECF No. 12-6 at 74-82. The victim thereafter made a 911 call "within seconds" of the attack. Id. at 84. During the struggle, the attacker's DNA was transferred to the pants of the victim, and the DNA was contributed by petitioner. ECF No. 12-7 at 93. The odds of the DNA being some person other than petitioner were astronomical: "one in 32 quintillion of the African American population, one in 160 quintillion of the Caucasian population and one of 130 quintillion of the Hispanic population." Id. at 96. M.C. also identified petitioner as the attacker at pre-trial, ECF No. 12-6 at 103-104, and in court, ECF No. 12-6 at 105.

Despite the astronomical odds of M.C.'s attacker being anyone else than petitioner, he focuses his attack on the evidence allegedly demonstrating that it was physically impossible for him to have attacked M.C. and to have been at the Zinfandel Light Rail station stalking J.V. at the same time. He also points to a discrepancy in M.C.'s testimony as to how quickly she called 911. However, petitioner has not demonstrated from the evidence of record that it was "impossible" for him to have been at the attack scene, and the 911 timing discrepancy, if indeed there was one, was for the jury to decipher—the jury must have determined the timing of the 911 call to be seconds and not minutes.[3]

As demonstrated during J.V.'s testimony, Exhibits 9, 10 and 11 showed the timing of the Train leaving the Butterfield station (station camera, Exhibit 9); the interim ride to Zinfandel (Train camera, Exhibit 11), and the disembarking at Zinfandel (station camera, Exhibit 10). According to the Stipulations entered into before the jury:

////

---

[2] M.C.'s attack occurred in the vicinity of Folsom Boulevard and Mills Tower Drive, ECF No. 12-6 at 73, 91-95) and J.V.'s attack occurred at Silverwood and Mills Park Dr, ECF No. 12-4 at 254. See the exhibits attached to these Findings and Recommendations discussed infra.

[3] As set forth above, M.C. testified on direct that she called 911 within seconds of the attack. However, she may have said 30 minutes prior to trial. ECF No 12-6 at 124. However, it became clear that the call was made within seconds, not minutes. Id. at 125. Moreover, given the circumstances, a reasonable jury would not believe that M.C. twiddled her thumbs for 30 minutes before seeking police help.

9

> Both the People and the defendant stipulate to the following: One People's Exh[ibit 9 is] a DVD containing a video from Regional Trans[it] camera located at Butterfield Light Rail Stat[ion in Sacramento] County. This video was recorded on February [20, 2014 at] approximately 12:31 p.m. to approximately 12:47 p.m.
>
> Stipulation two, the People's Exhibit Number 10 also contains videos from security cameras located at the Zinfandel Light Rail Station in Sacramento County. These videos were recorded on February 20, 2014, beginning at approximately 12:52 p.m. and ending at approximately 12:58 p.m.
>
> Stipulation three, People's Exhibit Number 11 is a DVD containing videos from the Regional Transit security cameras located inside of the light rail train that travelled between Butterfield Light Rail Station at approximately 12:47 p.m. and the Zinfandel Light Rail Station at approximately 1252 (sic 12:52) p.m.
>
> *The time stamp on this video is approximately one hour off of the actual time.*

ECF No. 12-5 at 15-16 (emphasis added).[4]

The prosecution went on to demonstrate that at 12:53 p.m., J.V. and her escort, *and petitioner* had just disembarked at the Zinfandel station. ECF No. 12-5 at 18. Further, M.C.'s 911 call commenced at 13:15 p.m. See Exhibit 89-A, ECF No. 12-4 at 24.[5]

Petitioner asserts, therefore, that it was physically impossible for him to have been at the Zinfandel station at 12:53, and at the place where M.C. was attacked (vicinity of Folsom Blvd. and Mills Tower Rd.—hereafter "Mills Tower Rd.") at approximately 13:14. Not so. The Zinfandel station and Mills Tower Rd. are very close to each other as demonstrated by Exhibit A and B and C to these Findings—only approximately one mile.[6] As the evidence shows, petitioner had his bike with him when he left the Zinfandel station. It would generally take only,

---

[4] Three clarifications need be noted here: first, the bracketed material stems from the fact that a sticky note or some other paper blanked out part of the transcript. However, the bracketed material clearly and easily flows from the context of the Stipulations as a whole.
Secondly, it is clear that the time stamp of the Exhibit 11 video was reading 13:47 and 13:52 respectively which was an hour ahead of the actual time 12:47 and 12:52 p.m. Finally, the hour is given in "military time," i.e., a 24-hour clock.

[5] To be precise as the notation reads 1:14:59 p.m, i.e. 13:14:59 p.m. in "military time."

[6] Exhibits A and B and C are Google Maps readouts of the areas in question. The undersigned takes judicial notice of these exhibits as the general geography facts therein cannot be reasonably disputed. The undersigned is not utilizing the approximate bicycle time listings for travel to Mills Tower Rd. from the Zinfandel station in Exhibit C as definitive time periods for this case, but rather as a general estimate.

10

approximately, 4 minutes for a bike rider to be at the attack scene, i.e., before 13:00 hours. Exhibit C. Far from being impossible, it was easily possible for the jury, and any reasonable fact finder, to have found that petitioner could have been both at the Zinfandel train station at the time indicated, and later at the attack scene when M.C.'s attack took place. Indeed, a bike rider could have gone to the scene, back to the Zinfandel station and back again to the scene before the time the attack occurred. Petitioner has not shown that the evidence was insufficient to convict him of M.C.'s attack, much less than the state courts were unreasonable in their determination to deny petitioner's claims.

Finally, petitioner believes the evidence insufficient for the final attack victim, A.M., also accosted by the very busy petitioner on February 20, 2014. ECF No. 12-5 at 130-131. A.M. testified that as she was walking to her apartment complex at night, petitioner rode his bike past her, uttered a profanity, and came back to grab her on the butt. Id. at 133, 137. A.M. went into her apartment complex, followed by petitioner; A.M. was phoning her sister at the same time. Id. at 139. A.M.'s sister came to the scene, shouted at petitioner, at which time petitioner left the scene. Id. at 139, 142-143. Petitioner was identified as her attacker when brought to the place where petitioner was detained on the night of the incident, id. at 150-151, and in court as well. Id. at 146-148. Cross-examination of petitioner muddied the in-court identification somewhat, id. at 161; however, the effect of this cross-examination on A.M.'s testimony was for the jury to decide. Petitioner's sister (Destinee Lomeli) also identified petitioner as the attacker on the night of the incident. ECF No. 12-8 at 98, 101. Petitioner did not testify at trial. The defense offered a few evidentiary submissions in an attempt to impeach some testimony with potential inconsistencies and rested. ECF No. 12-8 at 1272-1274.[7]

The issue for analysis is whether the state courts' rejection of petitioner's sufficiency of the evidence claims and/or ineffective assistance of counsel for failure to challenge the sufficiency of the evidence, were decisions which fairminded jurists could make within the

////

---

[7] It should be noted here that much corroborating evidence was adduced by the prosecution for all victims in terms of police testimony and exhibits. However, it is not necessary to specifically relate that evidence, as what is related in the opinion is more than enough for the sufficiency of the evidence analysis.

already strict parameters for judging evidence sufficiency or the related ineffectiveness of appellate counsel issues. Judging from the discussion above, including the legal standards for the habeas issues set forth above, the answer is unequivocally a "yes" – the evidence was clearly sufficient and reasonable counsel would not have raised sufficiency of the evidence issues on appeal. And, there is no need to separately analyze the ineffective assistance of appellate counsel issues in that if the evidence was clearly sufficient for all verdicts, as it was, reasonable appellate counsel cannot be faulted for not raising "loser" issues on appeal, nor could petitioner have been prejudiced by the lack of an appellate issue set forth by appellate counsel regarding insufficiency of the evidence.

*Certificate of Appealability*

Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Cases, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate of appealability may issue only "if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). For the reasons set forth in these findings and recommendations, a substantial showing of the denial of a constitutional right has not been made in this case.

*Conclusion*

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Petitioner's petition for writ of habeas corpus be denied; and

2. The District Court decline to issue a certificate of appealability as to neither the outcome of straight sufficiency of evidence issue, nor the related ineffective assistance of appellate counsel issue, are subject to any substantial doubt.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen days after service of the objections. The parties are

advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated: December 10, 2019

<u>/s/ Gregory G. Hollows</u><br>UNITED STATES MAGISTRATE JUDGE



EXHIBIT A



EXHIBIT B



EXHIBIT C